Approved: _____
             CHRISTINE I. MAGDO
             Assistant United States Attorney

Before:   THE HONORABLE DEBRA FREEMAN
           United States Magistrate Judge **21 MAG 880**
           Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA     :

       - v. -           :   **SEALED COMPLAINT**

JEREMY SPENCE,          :   Violations of
                    7 U.S.C. §§ 9(1) & 13(a)(5);
   a/k/a "Coin Signals,"   :   17 C.F.R. § 180.1;
                    18 U.S.C. §§ 1343 & 2.
       Defendant.     :
                    COUNTY OF OFFENSES:
                :   NEW YORK

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    BRANDON RACZ, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

### COUNT ONE
**(Commodities Fraud)**

    1.   From in or about November 2017 through in or about April 2019, in the Southern District of New York and elsewhere, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, willfully and knowingly, used and employed, and attempted to use and employ, in connection with a contract of sale of a commodity in interstate commerce, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, any manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, any untrue or misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue or misleading; and (c) engaging, or attempting to engage in any act, practice, and course of business which operates and would operate as a fraud and deceit upon any person, to wit, SPENCE, who solicited approximately 170 investors to invest in various cryptocurrency trading pools he managed, made false and misleading statements to investors about, among other things, the performance

of their investments, and utilized new investor funds in a Ponzi-like manner to make payments to other investors.

(Title 7, United States Code, Sections 9(1) and 13(a)(5); Title 17, Code of Federal Regulations, Section 180.1; Title 18, United States Code, Section 2.)

**COUNT TWO**
**(Wire Fraud)**

2.   From in or about November 2017 through in or about April 2019, in the Southern District of New York and elsewhere, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SPENCE, who solicited approximately 170 investors to invest in various cryptocurrency trading pools he managed, made false and misleading statements to investors about, among other things, the performance of their investments, and utilized new investor funds in a Ponzi-like manner to make payments to other investors.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.   I have been a Special Agent with the FBI for approximately five years. I am currently assigned to a squad that investigates white collar crimes, including complex financial and securities and commodities fraud crimes. I have participated in investigations of such offenses, and have made and participated in arrests of individuals who have committed such offenses.

4.   The information contained in the Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) trading records, bank records, telephone records, and records of electronic communications, including text messages and messages over other online messaging applications; (b) publicly available information; (c) conversations with, and reports of interviews with, non-law enforcement witnesses; and (d) conversations with other agents and

with employees of the United States Commodity Futures Trading Commission.

5. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Background on Cryptocurrency

6. Cryptocurrencies such as Bitcoin (BTC) and Ethereum (ETH) are decentralized, peer-to-peer forms of electronic currency. Cryptocurrency is a digital representation of value that can be digitally traded and functions as (1) a medium of exchange; (2) a unit of account; and/or (3) a store of value, but does not have legal tender status. Unlike "fiat currency," like the U.S. dollar and the Euro, cryptocurrency is not issued by any governmental entity and functions only by agreement within the community of users of that particular currency.

7. Cryptocurrencies are held by their owners in electronic "wallets." These wallets have unique addresses, which are designated by a string of letters and numbers. Only an individual who possesses the unique "private key" associated with a wallet's address can access the cryptocurrency in that wallet. However, any individual can send cryptocurrency to any wallet.

8. Under Title 7, United States Code, Section 1a(9), a "commodity" includes "all other goods and articles . . . and all services, rights, and interests . . . in which contracts for future delivery are presently or in the future dealt in." This includes virtual currencies such as Bitcoin and Ethereum.

## Relevant Persons and Entities

9. Based on my participation in this investigation, I have learned the following, in substance and in part:

a. In or about 2017, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, created an online persona, including through the use of the social networking and micro-blogging website Twitter and through messages sent using communication applications ("apps") such as Discord. Using the moniker "Coin Signals," SPENCE held himself out as a successful cryptocurrency trader offering

investing tips and trade "signals." Based on my training and experience, and my review of SPENCE's communications, a "signal" is a recommendation for an investor to buy or sell a particular asset. The information that SPENCE posted to Twitter was available to the public, whereas his Discord messages were available only to an invitation-only online group, whose members usually paid a membership fee to SPENCE.

b.   At all times relevant to this Complaint, SPENCE resided in New York, New York.

### Overview of the Fraudulent Scheme

10.   From in or about November 2017 through in or about April 2019, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, created and managed several cryptocurrency investment pools, for which he solicited cryptocurrency worth, in aggregate, more than approximately $5.37 million at the time, from more than 170 individual investors.  SPENCE solicited these investments through false representations, including, among others, that SPENCE's crypto trading had been extremely profitable. In truth and in fact, SPENCE's trading had been consistently unprofitable.

11.   To forestall redemptions by investors, and to continue to raise money from investors to fund his scheme, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, generated fictitious account balances, which he made available to investors online. Instead of accurately reporting the trading losses SPENCE was incurring, the account balances falsely indicated to investors that they were making money by investing with SPENCE.

12.   From in or about November 2017 through in or about April 2019, to hide his trading losses, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, used new investor funds to pay back other investors in a Ponzi-like fashion. In total, SPENCE distributed cryptocurrency worth at least approximately $2 million to investors substantially from funds previously deposited by other investors.

### SPENCE Solicits Investments in his Cryptocurrency Funds

13.   Based on my participation in interviews of investors and associates of JEREMY SPENCE, a/k/a "Coin Signals," the defendant, and my review of communications and other information provided by these investors and associates, I have learned the following, in substance and in part:

a.    From at least in or about November 2017 through at least in or about April 2019, while located in the Southern District of New York, through his Twitter account and Discord chat groups, SPENCE solicited investors in various cryptocurrency investment pools that SPENCE managed (the "Funds"). SPENCE solicited investments for several Funds, the largest and most active of which were the Coin Signals Bitmex Fund, a/k/a the "CS Mex Fund," the Coin Signals Alternative Fund, a/k/a the "CS Alt Fund," and the Coin Signals Long Term Fund. Investors who wanted to participate in a Fund would transfer cryptocurrency, such as Bitcoin and Ethereum, to SPENCE through means of the internet, in order for SPENCE to invest it. Most of the investors in the Funds were individual, retail customers.

b.    With respect to the CS Mex Fund, SPENCE represented to investors that he would invest using an online trading platform called Bitmex, which operated outside of the United States. According to its website, Bitmex offered a Bitcoin investment vehicle called a "perpetual contract," which it described as "a derivative product that is similar to a traditional futures contract" but which has "no expiry or settlement" date. The Bitmex website further stated that a perpetual contract "is aimed at replicating the underlying spot market but with enhanced leverage."

c.    With respect to the CS Alt Fund, SPENCE represented to investors that he would invest in lesser-known cryptocurrencies, such as Ven, Viacoin, and ARK.

d.    For each Fund, including the CS Mex Fund, SPENCE, or individuals acting at his direction (the "Administrators"), created and managed chat rooms on Discord through which SPENCE and the Administrators communicated with investors. At SPENCE's direction, the Administrators performed tasks such as updating investor account balances.

e.    SPENCE represented to investors that his trading in the Funds was executed in "rounds," the average length of which was approximately 8 days. For instance, for the CS Mex Fund, there were a total of 37 rounds in which investors could participate. At the end of each round, SPENCE explained that he exited all of his positions. SPENCE further represented to investors that this pattern of trading in rounds minimized the downside risk of investing in the Funds.

f.    At the end of each round, SPENCE reported to the Administrators what SPENCE claimed was an overall percentage gain or loss for each Fund. The Administrators then entered the

percentages that were communicated by SPENCE into a computer program (a "bot") that used the percentages to calculate each customer's account balance. Investors could request their account balance by querying the bot, and the bot would display their alleged account balances.

## SPENCE Makes Materially False Statements
## Regarding the Profitability of the Funds

14. Based on my participation in interviews of investors and associates of JEREMY SPENCE, a/k/a "Coin Signals," the defendant, my review of records provided in connection with these interviews, and my review of trading records, I have learned the following, in substance and in part:

a. From at least in or about November 2017 through at least in or about April 2019, SPENCE represented to investors and the Administrators that SPENCE's trading in the Funds consistently resulted in outsized returns. Based on SPENCE's false and misleading representations regarding his profitable trading in the Funds, investors transferred additional assets into the Funds.

b. For example, on or about January 28, 2018, SPENCE posted a message in a Discord chat group falsely claiming that his trading of investor funds over the past month had generated a return of more than 148%. As a result of this misrepresentation, investors transferred additional funds to SPENCE. In truth and in fact, over that same period of approximately one month, SPENCE's trading resulted in net losses in the accounts in which he traded investor funds.

## As a Result of SPENCE's Misrepresentations
## Regarding the Profitability of the Funds,
## Investor-1 Invests More Bitcoin with SPENCE

15. Based on my participation in interviews of two victim investors ("Investor-1" and "Investor-2"), my review of communications among JEREMY SPENCE, a/k/a "Coin Signals," the defendant, Investor-1, Investor-2, and others, and my review of trading records, I have learned the following, in substance and in part:

a. On or about May 13, 2018, SPENCE sent an email to Investor-2, attaching a chart that reflected a cumulative return in the CS Mex Fund of approximately 480% from January 18, 2018 through May 13, 2018. After receiving the email from SPENCE, Investor-2 conveyed, in sum and substance, the returns reflected in the chart to Investor-1. However, in truth and in fact, from

its inception on or about November 22, 2017 through on or about May 10, 2018, the CS Mex Fund incurred losses, not gains.

b.   Based on SPENCE's false representations about his profitable trading in the CS Mex Fund, Investor-1 made two investments. First, on or about July 17, 2018, Investor-1 invested approximately 36.8 BTC, which was worth approximately $259,000 at the time, in the CS Mex Fund. Second, on or about July 30, 2018, Investor-1 made an additional investment of approximately 18.7 BTC, which was worth approximately $150,000 at the time, in the CS Mex Fund.

c.   In connection with his investments on or about July 17, 2018 and July 30, 2018, Investor-1 entered into contracts with SPENCE, which stated, in relevant part, that SPENCE "commits that all provided funds will be traded with the goal of increasing the amount of Bitcoin and will be done so in the best interest of the investor."

d.   On or about September 12, 2018, Investor-1 queried the bot for the balance in Investor-1's CS Mex Fund account. On or about the same day, the bot, which had been programmed with percentages of profit and loss provided by SPENCE to the Administrators, reported to Investor-1 an overall profit of approximately 4.0 BTC and a total account balance of approximately 59.5 BTC. However, in truth and in fact, from on or about July 17, 2018 through on or about September 12, 2018, SPENCE's trading in the CS Mex Fund had resulted in a net loss in the Fund of approximately 92.4 BTC.

e.   On or about September 29, 2018, the bot reported to Investor-1 a cumulative profit of approximately 6.9 BTC, which represented approximately 12.37% total return on Investor-1's investment. However, in truth and in fact, from on or about September 13, 2018 through on or about September 28, 2018, SPENCE's trading in the CS Mex Fund resulted in a net loss in the Fund of approximately 10.1 BTC.

f.   On or about October 1, 2018, SPENCE posted a message in a Discord chat group claiming that the CS Mex Fund contained 1,300 BTC, which was the equivalent of approximately $8 million dollars at the time. However, in truth and in fact, the CS Mex Fund contained approximately 2.1 BTC, which was the equivalent of approximately $14,000 at the time.

g.   On or about October 2, 2018, based on the purported positive trading results SPENCE caused the bot to report to Investor-1 on or about September 12, 2018 and September 29, 2018,

Investor-1 invested an additional approximately 60.6 BTC, which was worth approximately $400,000 at the time, in the CS Mex Fund. In connection with the October 2, 2018 investment, Investor-1 and SPENCE again entered into a contract which stated, in relevant part, that SPENCE "commits that all provided funds will be traded with the goal of increasing the amount of Bitcoin and will be done so in the best interest of the investor."

### SPENCE Uses Bitcoin from Investor-1 and Others to Pay Back Other Investors in a Ponzi-like Manner

16. Based on my review of trading records and bank account records, I have learned the following, in substance and in part:

a. From in or about November 2017 through in or about April 2019, to hide his trading losses, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, used new investor funds to pay back other investors in a Ponzi-like fashion.

b. For example, on or about October 2, 2018, on or about the same day on which SPENCE received 60.6 BTC from Investor-1, as described above, SPENCE used Investor-1's investment to repay a total of approximately 40 BTC to approximately six earlier investors. On or about October 1, 2018, prior to the addition of Investor-1's 60.6 BTC on October 2, 2018, the CS Mex Fund contained only approximately 2.1 BTC.

c. In total, from in or about November 2017 through in or about April 2019, SPENCE made payments of at least approximately 289 BTC, worth approximately $2.14 million at the time the payments were made, and at least approximately 31.4 ETH, worth approximately $18,000 at the time the payments were made, to investors substantially from cryptocurrency previously deposited by other investors.

### SPENCE Makes False Statements to Forestall Redemptions

17. Based on my review of records provided by exchanges, including trading records and customer correspondence, my participation in interviews with representatives of the same exchanges, and communications among JEREMY SPENCE, a/k/a "Coin Signals," the defendant, and the Fund investors and Administrators, I have learned the following, in substance and in part:

a. In or about late September 2018, certain investors began to request withdrawals or refunds from their accounts. However, by late September 2018, SPENCE had lost nearly all of his

investors' cryptocurrency and could not honor those withdrawal or refund requests.

b.    On or about October 15, 2018, in order to forestall detection of his fraudulent scheme, SPENCE falsely told investors that his computer had been hacked, and that approximately 40 BTC had been stolen from the Funds. To reassure investors, SPENCE falsely represented that SPENCE possessed sufficient assets to repay the investors, and attributed the delay in processing their withdrawal requests to enhanced security measures that SPENCE had implemented after the hack. On or about November 28, 2018, SPENCE falsely announced to investors that "[t]he hack that happened 2 months ago ... was not 40 BTCs, it was actually 150 BTCs."

c.    To the best of my knowledge, there is no evidence that, in or about September and October 2018, either 40 or 150 BTC were stolen from any account controlled by SPENCE.

### SPENCE Provides Falsified Records Regarding the Balance of the CS Mex Fund to the Administrators

18.    Based on my participation in interviews of Administrators, and my review of communications among Administrators, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, and others, and my review of trading records, I have learned the following, in substance and in part:

a.    On or about November 4, 2018, in order to reassure investors, SPENCE falsely represented via a Discord message to investors that the CS Mex Fund had increased in value by almost 500 BTC since inception. In truth and in fact, from inception through November 4, 2018, the CS Mex Fund had net trading losses of approximately 230 BTC.

b.    On or about November 16, 2018, as investors continued to express concerns about their Fund investments, SPENCE provided the Administrators with video recordings purportedly showing SPENCE accessing his Bitmex accounts, which supposedly contained the assets of the CS Mex Fund. The videos displayed a total combined balance for SPENCE's Bitmex accounts of approximately 982 BTC. Thereafter, the Administrators informed the investors that the Administrators had seen proof that SPENCE had sufficient funds to repay all the investors.

c.    On or about November 20, 2018, after the Administrators requested additional proof of SPENCE's assets, SPENCE provided the Administrators with what appeared to be proof of a balance of approximately 1,000 BTC in SPENCE's Bitmex

accounts. However, in truth and in fact, at no point in or about November 2018 did the total balance of SPENCE's Bitmex accounts exceed approximately 11 BTC.

### SPENCE Admits to Investors that His Trading Resulted in Significant Losses

19. Based on my review of Discord communications sent by JEREMY SPENCE, a/k/a "Coin Signals," the defendant, I have learned the following, in substance and in part:

    a.  On or about December 19, 2018, SPENCE posted a Discord message to investors stating, in relevant part:

> I've spent the past two months trying to hide my drawdowns with lies and deceit. I continually tried to stall for the positions I was in to be in a better state, but that never came. . . . I . . . continued to make things worse by making more bad trading decisions. . . . Risk is a part of the game, and I should have been more honest with my losses.

20. Despite admitting to having deceived investors about his trading losses, JEREMY SPENCE, a/k/a "Coin Signals," the defendant, also made false statements to investors in the same Discord message. For example, SPENCE wrote: "Up until recently, AUM [assets under management] was over 1100 btc. The gains from the past have been very real." In truth and in fact, SPENCE's trading activity consistently resulted in losses.

    WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of JEREMY SPENCE, a/k/a "Coin Signals," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

s/ Brandon Racz, by the Court, with permission
_____
BRANDON RACZ
Special Agent
Federal Bureau of Investigation

Sworn to before me this
 24th day of January 2021
       by reliable electronic means (FaceTime)

_____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK