L32sSPEc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                        21 CR 116 (LAK)
                                 Telephone Conference

JEREMY SPENCE,

            Defendant.

------------------------------x

                                     New York, N.Y.
                                     March 2, 2021
                                     11:15 a.m.

Before:

                  HON. LEWIS A. KAPLAN,

                            District Judge

                      APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
CHRISTINE MAGDO
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  SYLVIE J. LEVINE

L32sSPEc

1            (The Court and all parties
2    appearing telephonically)
3            THE COURT:  Good afternoon.  Who is here for the
4    government?
5            MS. MAGDO:  Good afternoon.  Christine Magdo on behalf
6    of the government.
7            THE COURT:  Who's on for the defendant?
8            MS. LEVINE:  Good morning, your Honor.  The Federal
9    Defenders of New York by Sylvie Levine on behalf of Mr. Spence.
10           THE COURT:  Is Mr. Spence on?
11           THE DEFENDANT:  Yes, I am, your Honor.
12           THE COURT:  Mr. Spence, it would be better if I could
13   see you.
14           THE DEFENDANT:  Sorry about that.
15           THE COURT:  How about you, Ms. Levine?  Can you go on
16   to video?
17           MS. LEVINE:  Sorry, your Honor.  I think I see myself
18   on the video.
19           Can you not see me?
20           THE COURT:  No.
21           Ms. Levine, this is an initial conference, right?
22           MS. LEVINE:  That's correct.
23           THE COURT:  I'll start by verifying, Mr. Spence, that
24   you understand that you may or may not have a right to be
25   present at this conference along with your attorney in a

1  courtroom before the judge live.
2          Assuming for the sake of discussion that you had such
3  a right, do you waive the right to have it go forward that way
4  and agree instead to proceed by this video conference?
5          THE DEFENDANT:  Yes, I do.
6          THE COURT:  Have you discussed fully with your lawyer
7  the implications of doing so, if any?
8          THE DEFENDANT:  Yes, I have.
9          THE COURT:  Ms. Magdo, is that satisfactory to the
10 government?
11         MS. MAGDO:  Yes, your Honor.
12         THE COURT:  Ms. Levine?
13         MS. LEVINE:  Yes, your Honor.
14         THE COURT:  OK.  Next I want to make clear that I
15 direct the prosecution to comply with its obligations under
16 Brady v. Maryland and its progeny to disclose to the defense
17 all information, whether or not admissible, that is favorable
18 to the defense, material either to guilt or to punishment, and
19 known to the prosecution.  Possible consequences for
20 noncompliance may include dismissal of individual charges or
21 the entire case, exclusion of evidence, and professional
22 discipline or court sanctions on the attorneys responsible.
23         I will be signing a written order more fully
24 describing this obligation and the possible consequences of
25 failing to meet it, and I direct the prosecution to review and

L32sSPEc

1   comply with that order.
2             Does the prosecution understand its obligations and
3   will it fulfill them?
4             MS. MAGDO:  Absolutely, your Honor, yes.
5             THE COURT:  OK.  Let's go from there.
6             The short version of what this case is all about,
7   please, Ms. Magdo?
8             MS. MAGDO:  Yes, your Honor.
9             Mr. Spence was indicted on February 22 by a grand jury
10  on two counts.  The first count is commodities fraud and the
11  second count is wire fraud.  It is in connection with some
12  cryptocurrency funds that he managed and for which he solicited
13  investors.  So he asked investors to invest with him in
14  cryptocurrency, such as Bitcoin, and then he claimed he would
15  be able to return outsized returns for them.
16            Unfortunately, his trading was largely unsuccessful.
17  But rather than let that be known to his clients, he provided
18  them with fake terms, fake account balances, and he also used
19  new investor money to pay back older investors in a Ponzi-like
20  fashion for a total amount of approximately $5 million.
21            THE COURT:  Well, sounds like the _Madoff_ case, doesn't
22  it, on a modest scale.
23            OK.  What's the discovery and when can you get it
24  completed?
25            MS. MAGDO:  We're working on it right now, your Honor.

1     The estimate is that it is approximately between two and four
2     gigabytes, and it consists mainly of documents that we have
3     received either voluntarily from witnesses through grand jury
4     subpoenas or through access agreements that we have with the
5     CFTC that has a parallel investigation to this one.
6              I'm hoping to get it out by Friday of this week, but
7     let me say early next week, just to build in a little bit of
8     extra room.
9              THE COURT:  Let's say discovery will be completed by
10    March 8.
11             Ms. Levine, of course, I understand you haven't seen
12    the material, but how long do you think you need for motions?
13             MS. LEVINE:  I think I would ask for 45 days, your
14    Honor.
15             THE COURT:  OK.  Motions by April 15.
16             Is two weeks enough for the government to respond?
17             MS. MAGDO:  Yes, your Honor.  That should be fine.
18             THE COURT:  So we'll say April 29.
19             Reply, if any, by May 6.
20             We'll have an argument or a conference -- let me look
21    at my calendar -- we'll say May 17 at 2:00 p.m.
22             Does that work for everyone?
23             MS. MAGDO:  That works for the government, your Honor.
24             MS. LEVINE:  That's fine for the defense as well.
25             THE COURT:  If this case goes to trial, how long a

L32sSPEc

1  trial are you looking at?
2          MS. MAGDO:  I think the government's case would be
3  more than a week, but not more than two weeks.
4          THE COURT:  A week is four days in my courtroom these
5  days.
6          MS. MAGDO:  Then let's say two weeks, to be safe.
7          THE COURT:  Ms. Levine?
8          MS. LEVINE:  Your Honor, it is very hard for me to
9  estimate at this point, but I can't imagine it being more than
10 a day or two in the defense case, with what I know now.
11         THE COURT:  OK.  Ms. Levine, have I lost the audio
12 here?
13         MS. LEVINE:  I can hear you.  Sorry.
14         THE COURT:  Is the defendant on bail?
15         MS. LEVINE:  Yes.  He's out on bail and living in the
16 district of Rhode Island with his parents.
17         THE COURT:  OK.  Well, I can give you a trial date,
18 but only on the understanding that the ability to keep it --
19 excuse me.
20         (Phone interruption)
21         That was the telephone company making sure my phone
22 was working because we lost power telephone and Internet last
23 night in the wind storm.
24         MS. MAGDO:  Oh, wow.
25         THE COURT:  Anyway, back to a trial date.

1           I would give you a trial date, but it would be on the
2    assumption that we're out of the protocol for trial dates that
3    we're in right now in light of COVID.
4           So let me take a look at my calendar.  I'm assuming
5    next fall would be acceptable to everybody, right?
6           MS. MAGDO:  Your Honor, I actually have a trial in a
7    different case before Judge Woods scheduled for October 4.
8           THE COURT:  How long a trial?
9           MS. MAGDO:  He's allowing the entire month of October
10   for it.
11          THE COURT:  Who is the judge?  I know you said it, but
12   I didn't hear.
13          MS. MAGDO:  Judge Gregory Woods.
14          THE COURT:  How is November 30?
15          MS. MAGDO:  That works for the government.
16          MS. LEVINE:  That's fine for the defense as well.
17          THE COURT:  If it begins to look like we're on the
18   COVID protocol that far into the future, I will put in for a
19   trial date essentially then, and who knows whether we will get
20   it.
21          OK.  Is there anything else I should know?
22          MS. MAGDO:  Your Honor, the government would move to
23   exclude time through the date of our next conference or
24   argument on May 17 to allow for the review of discovery and the
25   preparation of motions.

L32sSPEc

1   THE COURT:  Any objection, Ms. Levine?
2   MS. LEVINE:  No, your Honor.
3   THE COURT:  Time is excluded through May 17.  I find
4 that the interest of justice served thereby, including those
5 identified by Ms. Magdo, outweigh the interest of the public
6 and the defendant in a speedy trial.
7   If there is nothing further, stay safe.  Talk to you
8 again in May.
9   MS. LEVINE:  Thank you, your Honor.
10   MS. MAGDO:  Thank you, your Honor.
11   THE DEFENDANT:  Thank you.
12   THE COURT:  Bye-bye.
13   (Adjourned)