# EXHIBIT A

LBUQspeP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA
 3
                v.                        21 CR 116 (LAK)(DCF)
 4                                              Plea

 5   JEREMY SPENCE

 6                Defendant
     ------------------------------x
 7
                                          New York, N.Y.
 8                                        November 30, 2021
                                          11:40 a.m.
 9

10   Before:

11                     HON. DEBRA C. FREEMAN
                                          Magistrate Judge
12

13                         APPEARANCES

14   DAMIAN WILLIAMS
          United States Attorney for the
15        Southern District of New York
     CHRISTINE I. MAGDO
16        Assistant United States Attorney

17   FEDERAL DEFENDERS OF NEW YORK INC.
          Attorney  for Defendant
18   SYLVIE LEVINE
     NEIL KELLY
19

20   ALSO PRESENT:  S.A. BRANDON RACZ (FBI)

21

22

23

24

25
```

LBUQspeP

1              (In open court; case called)

2              DEPUTY CLERK:  Counsel, please state your name for the

3       record.

4              MS. MAGDO:  Good morning, your Honor.  Assistant U.S.

5       Attorney Chris Magdo.  With me at counsel table is FBI special

6       agent Brandon Racz.

7              THE COURT:  Good morning.

8              MS. LEVINE:  Good morning.  The Federal Defenders of

9       New York by Sylvie Levine and Neil Kelly, on behalf of

10      Mr. Spence, who is present.

11             THE COURT:  Good morning.

12             This is here on reference from Judge Kaplan for a plea

13      to Count One of the indictment.  Is that right?

14             MS. MAGDO:  Yes, your Honor.

15             THE COURT:  Mr. Spence, the indictment in this case

16      charges you with felony crimes, and you have a right to a trial

17      on the charges before a United States District Judge.

18             If you are found guilty, you will be sentenced by a

19      United States District Judge, and ordinarily a defendant who

20      wishes to enter a plea to any of these types of charges would

21      do that before the district judge as well, who would then

22      conduct a so-called plea allocution, which is the

23      question-and-answer session that must accompany the entry of a

24      plea.

25             However, with the defendant's consent, a United States

LBUQspeP

1    Magistrate Judge as myself also has the authority to take a

2    plea.  If you were to consent to proceed before a magistrate

3    judge for the purpose of entering a plea, you would receive all

4    of the same procedural protections that you would receive if

5    you were proceeding before the district judge.  Do you

6    understand that?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Is it your wish to consent to proceed

9    before a magistrate judge for the purpose of entering a plea?

10             THE DEFENDANT:  Yes, it is.

11             THE COURT:  I have a consent form that's been handed

12   up.  It's entitled Consent to Proceed Before a United States

13   Magistrate Judge on a Felony Plea Allocution.  Did you sign

14   this form?

15             THE DEFENDANT:  Yes, I did.

16             THE COURT:  Before you signed it, did your lawyer

17   explain it to you?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Have any threats or promises of any kind

20   been made to you to cause you to agree to this procedure today?

21             THE DEFENDANT:  No.

22             THE COURT:  I will accept the consent.

23             In order to take your plea, I must ask you some

24   questions for which I need to place you under oath.

25             (Defendant sworn)

LBUQspeP

1          THE COURT:  Please state your full name for the

2    record.

3          THE DEFENDANT:  Jeremy Spence.

4          THE COURT:  Are you a United States citizen?

5          THE DEFENDANT:  I am.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  25.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Some college.

10          THE COURT:  Are you now or have you recently been

11    under the care of a doctor for any reason?

12          THE DEFENDANT:  I have a psychiatrist that prescribes

13    me a prescription, but that's it.

14          THE COURT:  Okay.  Do you have a mental health

15    condition that could affect your ability to participate fully

16    in these proceedings today?

17          THE DEFENDANT:  No.

18          THE COURT:  Does the medication that you take affect

19    your ability in any way to participate fully?

20          THE DEFENDANT:  No.

21          THE COURT:  Have you taken the medication that you

22    were supposed to take before this proceeding?

23          THE DEFENDANT:  I did.

24          THE COURT:  Do you have any condition that affects

25    your ability to see or to hear?

LBUQspeP

```
1              THE DEFENDANT:  No.

2              THE COURT:  Do you have any condition that affects

3    your ability to think or to reason or understand or make

4    decisions or judgments on your own behalf?

5              THE DEFENDANT:  No.

6              THE COURT:  Have you ever been treated for drug

7    addiction or alcoholism?

8              THE DEFENDANT:  No.

9              THE COURT:  As you appear before me today, are you

10   under the influence of any kind of drugs or alcohol or

11   medication?

12             THE DEFENDANT:  Just the medication that I was

13   prescribed.

14             THE COURT:  Right.  So there's a difference between

15   taking medication and being under the influence of medication

16   such that you are not in your right mind and able to think

17   clearly.  So what I'm asking is not have you taken medication,

18   but are you under the influence of any medication?

19             THE DEFENDANT:  No.

20             THE COURT:  Is your mind clear today?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you generally feel all right today?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you have any trouble understanding the

25   questions I'm asking you?
```

LBUQspeP

1          THE DEFENDANT:  No.

2          THE COURT:  Have you received a copy of the indictment

3   in this case?

4          THE DEFENDANT:  I have.

5          THE COURT:  Have you had a chance to read it or do you

6   want me to take the time to read it to you?

7          THE DEFENDANT:  I have had a chance to read it.

8          THE COURT:  Do you understand what it says you did?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Have you had enough time to talk to your

11   attorney about the charges and about how you wish to plead?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you satisfied with the representation

14   and advice given to you by your attorney?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you ready to enter a plea?

17          THE DEFENDANT:  Yes.

18          THE COURT:  With respect to Count One, bearing in mind

19   that that count charges that you committed the crime of

20   commodities fraud in violation of Title 7 of the United States

21   Code, Sections 9, 1 and 13(a)(5), and Title 7 of the Federal

22   Code of Regulation, Section 180.1 and Title 18 of U.S. Code,

23   Code, Section 2.  How do you wish to plead to that charge?

24   Guilty or not guilty.

25          THE DEFENDANT:  Guilty.

LBUQspeP

1      THE COURT:  Because you are proposing to enter a
2  guilty plea, I have to ask you some additional questions to be
3  sure that you understand both the nature of that charge and the
4  consequences of your plea, and to ensure that your plea is
5  voluntary.
6      First, I want you to understand that if you are
7  convicted of this particular charge, you could face on that
8  count alone a maximum term of imprisonment of ten years, a
9  maximum term of supervised release of three years, a maximum
10  fine of the greatest of $1 million or twice the gross pecuniary
11  gain or monetary gain that you derived from the offense or
12  twice the gross pecuniary loss to persons other than yourself
13  resulting from the offense, and a mandatory special assessment
14  of $100.  Do you understand all of that?
15      THE DEFENDANT:  Yes.
16      THE COURT:  Do you also understand that if convicted
17  of this crime, the Court may order you to pay restitution to
18  any victims of the crime?
19      THE DEFENDANT:  Yes.
20      THE COURT:  Counsel, is there a forfeiture allegation
21  with respect to Count One?
22      MS. MAGDO:  No, there is not.
23      THE COURT:  Do you also understand that if as part of
24  your sentence you are placed on a term of supervised release
25  and you then violate any conditions of that release, your

LBUQspeP

1     supervised release may be revoked and you may face an

2     additional term of imprisonment?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Do you understand that if your supervised

5     release is revoked, the Court may order you to serve in prison

6     all or part of the term of supervised release that's authorized

7     by law for this offense without giving you credit for time that

8     you may have already served on supervised release?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Do you understand that you have a right to

11    plead not guilty to this charge and the right to a speedy and

12    public trial and a jury trial if you wish?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Do you understand that if you previously

15    entered a plea of not guilty, you are not required to change

16    your plea?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Do you understand that if you were to go

19    to trial, the burden would be on the government to prove your

20    guilt by competent evidence beyond a reasonable doubt?

21                   THE DEFENDANT:  Yes.

22                   THE COURT:  Do you understand that if you were to go

23    to trial, you would be presumed to be innocent unless and until

24    the government did prove your guilt beyond a reasonable doubt?

25                   THE DEFENDANT:  Yes.

LBUQspeP

1          THE COURT:  Do you understand that if you were to go

2   to trial by jury, a jury composed of 12 people selected from

3   this district would have to agree unanimously that you were

4   guilty?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that at a trial, you'd

7   be entitled to be represented by an attorney; and if you could

8   not afford to hire one, an attorney would be provided to you

9   free of charge?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that you have a right to

12   be represented by counsel, and, if necessary, to have the Court

13   appoint counsel for you and applies not only to the trial

14   itself but to every other critical stage of the proceedings

15   against you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that at a trial, you

18   would be entitled through your attorney to cross-examine any

19   witnesses called by the government to testify against you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that at a trial, you

22   would be entitled to testify and to present evidence on your

23   own behalf?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you also understand that this means

LBUQspeP

1    that you would have the right to call witnesses to testify on

2    your behalf?

3             THE DEFENDANT:  Yes.

4             THE COURT:  And also that you would have the right to

5    have the Court issue subpoenas to compel witnesses to appear to

6    testify at trial?

7             THE DEFENDANT:  Yes.

8             THE COURT:  Do you understand that at a trial, you

9    would not be required to incriminate yourself; that is, you

10   would not be required to testify against yourself?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you understand that this means that at

13   a trial, you would have the right to testify if you wanted to

14   do, so but no one could force you to testify if you did not

15   want to do so.  And, furthermore, no inference or suggestion of

16   guilt could be drawn if you chose not to testify at trial?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Do you understand that if you go forward

19   with your guilty plea, you will be giving up all of these types

20   of protections that I've just described, including your very

21   right to a trial; and the only remaining step will be the

22   imposition of sentence by the district judge in this case, who

23   is Judge Kaplan?

24            THE DEFENDANT:  I do, yes.

25            THE COURT:  Do you understand that if any of the

LBUQspeP

1    answers that you give me today prove to be untruthful, you

2    could face a separate prosecution of perjury or for making a

3    false statement to the Court?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that if you plead guilty

6    and your guilty plea is accepted and you are adjudged guilty,

7    that adjudication may deprive you of valuable civil rights,

8    such as the right to vote in some jurisdictions or to hold

9    public office or to serve as a juror or to possess a firearm?

10             THE DEFENDANT:  Yes.

11             THE COURT:  In light of everything I've told you so

12   far, do you still wish to plead guilty?

13             THE DEFENDANT:  I do.

14             THE COURT:  Do you understand that the decision as to

15   the appropriate sentence in your case will be entirely up to

16   Judge Kaplan?

17             THE DEFENDANT:  I do.

18             THE COURT:  Do you understand that Judge Kaplan will

19   have discretion in determining your sentence, and that his

20   discretion will be limited only by what the law requires for

21   this particular charged offense?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you understand in determining your

24   sentence the Court will have the authority to impose an order

25   of restitution and an obligation to impose a special

LBUQspeP

1    assessment?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you also understand that in determining

4    your sentence, the Court will have the obligation to calculate

5    and consider the so-called Sentencing Guidelines, even though

6    it will not be required to sentence you within the guidelines

7    range?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Have you and your attorney had a chance to

10   talk about how the guidelines may be calculated in your case?

11           THE DEFENDANT:  We have.

12           THE COURT:  Do you understand that the Court will not

13   be able to determine the guidelines for your case until after a

14   presentence report has been completed, and both you and the

15   government have had the chance to challenge the facts that are

16   reported there by the probation officer?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you understand that even after the

19   guidelines calculation has been made for a case, the sentencing

20   Judge will have the authority to impose a sentence that is even

21   less severe or more severe than the sentence recommended by the

22   guidelines as long as it's within the statutory maximum for the

23   charged crime?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you understand that in addition to

LBUQspeP

1    considering the Sentencing Guidelines, the Court will also have

2    to consider possible departures from the guidelines and a

3    number of different factors in deciding on the appropriate

4    sentence to impose in your case?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Have you and your attorney had a chance to

7    talk about the various factors that are listed in the relevant

8    provision of law that's Title 18 of the U.S. Code, Section

9    3553(a) and about how those different factors may apply to you

10   in your particular case?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you understand that those factors

13   include, but are not limited to, the actual conduct in which

14   you will engaged, the victim of the offense, the role you

15   played in the offense, whether or not you have accepted

16   responsibility for your acts, whether you have any criminal

17   history, and whether you have engaged in any obstruction of

18   justice?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you understand that even if you end up

21   shocked and disappointed by your sentence, you will still be

22   bound by your guilty plea?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Do you understand that under some

25   circumstances, you or the government may have the right to

LBUQspeP

1    appeal the sentence that is imposed?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that there is no parole

4    in the federal system, and if you are sentenced to prison, you

5    will not be released early on parole?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Understanding everything I have just told

8    you, do you still wish to plead guilty?

9              THE DEFENDANT:  I do.

10             THE COURT:  I have a copy of a plea agreement in this

11   case.  It's a letter from the Office of the United States

12   Attorney to your counsel dated August 24, 2021.  Did you sign

13   this plea agreement?

14             THE DEFENDANT:  I did.

15             THE COURT:  Before you signed it, did you discuss it

16   with your attorney?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Did she explain to you all of its terms

19   and conditions?

20             THE DEFENDANT:  Yes.

21             THE COURT:  In reviewing the plea agreement, I note

22   that it contains an analysis as to how the Sentencing

23   Guidelines may impact on any prison term that may be imposed in

24   your case.  Based on that analysis, the agreement states the

25   conclusion that if the guidelines were applied, you could

LBUQspeP

1    expect the range for a prison sentence to be from 57 to 71

2    months.  Do you understand that?

3             THE DEFENDANT:  Yes.

4             THE COURT:  The agreement also states the conclusion

5    that under the guidelines, the applicable range for a fine

6    would be anywhere from $2,000 to a million dollars.  Do you

7    understand that as well?

8             THE DEFENDANT:  Yes.

9             THE COURT:  Do you understand that Judge Kaplan is not

10   bound by the guidelines analysis contained in the plea

11   agreement, and that he will do his own analysis which may

12   result in a guidelines range that is different from the one

13   stated in the plea agreement?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Do you understand that even if Judge

16   Kaplan agrees with the guidelines analysis contained in the

17   plea agreement, and therefore concludes the guidelines range

18   for a prison sentence in your case would be from 57 to 71

19   months, he would still be free to impose a sentence that is

20   either less than 57 or more than 71 months?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Do you understand that under the terms of

23   this plea agreement, you are agreeing not to seek a so-called

24   departure from the stated guidelines range, even though you are

25   reserving your right to seek a sentence outside the guidelines

LBUQspeP

1   based on the factors listed in Section 3553(a)?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that under the terms of

4   this plea agreement, as long as Judge Kaplan sentences you to a

5   prison sentence of no longer than 71 months, you are giving up

6   your right to challenge that sentence either by an appeal to

7   the Court of Appeals or by any further application to this

8   Court?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you also understand that under the

11   terms of this plea agreement, you are agreeing not to challenge

12   any term of supervised release that may be imposed that is less

13   than or equal to the maximum term permitted for the crime,

14   which is three years?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you also understand that you are

17   agreeing not to challenge any fine that may be imposed, as long

18   as that fine is less than or equal to $10 million -- I'm sorry

19   -- $1 million.  My apologies.

20          THE DEFENDANT:  Yes.

21          THE COURT:  Counsel, can you tell me if there's

22   already been a *Brady* order entered in this case?

23          MS. MAGDO:  I'm sorry, your Honor, I don't remember if

24   Judge Kaplan did that.

25          THE COURT:  If you had an appearance before him at

LBUQspeP

1    which he did that.

2              MS. MAGDO:  We didn't have any in-person --

3              THE COURT:  I will in excess of caution do that.

4              MS. MAGDO:  Please.  Thank you.

5              THE COURT:  I'm going to direct the prosecution to

6    comply with its obligation under *Brady v. Maryland* and its

7    progeny to disclose to the defense all information, whether

8    admissible or not that's favorable to the defendant, material

9    either to guilt or to punishment and known to the prosecution.

10   Possible consequences for noncompliance my include dismissal of

11   individual charges or the entire case, exclusion of evidence

12   and professional discipline or court sanctions on the attorneys

13   responsible.

14             I will go ahead and enter a written order, unless

15   Judge Kaplan has already done so, that more fully describes

16   this obligation and the possible consequences of failing to

17   meet it.  I direct the prosecution to review and comply with

18   the Court's order.

19             Does the prosecution confirm that it understands its

20   obligations and will fulfill them?

21             MS. MAGDO:  Yes, your Honor.

22             THE COURT:  Mr. Spence, do you understand that under

23   the terms of the plea agreement, even if it turns out that the

24   government illegally withheld from your counsel certain

25   information that would have been helpful to you in defending

LBUQspeP

1   yourself at trial, you are giving up your right to complain

2   about that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Counsel, I note that the plea agreement

5   contains a paragraph regarding potential immigration

6   consequences of the plea but Mr. Spence has indicated he is a

7   U.S. citizen.  Do you have any reason to not believe that?

8           MS. MAGDO:  I have no reason to doubt that.

9           THE COURT:  Mr. Spence, I want you to understand that

10  I also have no reason to doubt what you tell me.  You have said

11  you're a United States citizen.  I assume that is correct, but

12  in excess of caution I do want to inform you that if by any

13  chance that is not the truth, and you are not a United States

14  citizen, your guilty plea could result in immigration

15  consequences, including potential deportation, which could be

16  mandatory in the circumstances, and denial of reentry and

17  denial of citizenship in the future.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that under the terms of

20  this plea agreement, you are agreeing not to challenge your

21  plea, your conviction or your sentence based on any immigration

22  consequences or even any perceived immigration consequences of

23  your plea?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Of your plea, conviction or sentence, I

LBUQspeP

1    should say.  Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Let me ask both counsel if there are any

4    other particular provisions of this plea agreement that you

5    would like me to review with Mr. Spence to be sure he

6    understands?

7              MS. MAGDO:  Not from the government, your Honor.

8    Thank you.

9              MS. LEVINE:  No, your Honor.

10             THE COURT:  Apart from what is in the plea agreement

11   itself, have any promises of any kind been made to you to

12   influence you to plead guilty?

13             THE DEFENDANT:  No.

14             THE COURT:  Have any promises been made to you

15   regarding the actual sentence you will receive?

16             THE DEFENDANT:  No.

17             THE COURT:  Do you understand that no one, including

18   your attorney or the government or this Court, can give you any

19   assurance as to what your sentence will be, as your sentence

20   will be determined solely by the sentencing judge after that

21   judge has ruled on any challenges to the presentence report,

22   has calculated the guidelines, has determined whether there are

23   grounds to adjust the guideline range or to sentence you

24   outside that range?

25             THE DEFENDANT:  Yes.

LBUQspeP

1          THE COURT:  Has any force or threat of force or any

2     other threats of any kind been made against you, either

3     directly or indirectly to influence how you plead today?

4          THE DEFENDANT:  No.

5          THE COURT:  Is your plea voluntary and made of your

6     own free will?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Before I ask you to explain what you did,

9     let me ask the government, please, to summarize the elements it

10    would need to establish at trial to sustain the charge?

11         MS. MAGDO:  Certainly, your Honor.

12         With respect to Count One, to which the defendant is

13    pleading guilty, that's the commodities fraud count, there are

14    three elements:

15         The first element is that the defendant:

16         (A) employed a device, scheme, or artifice to defraud;

17         (B) made an untrue statement of a material fact, or

18    omitted to state a material fact which made what he said under

19    the circumstances misleading; or

20         (C) engaged in an act, practice or course of business

21    that operated or would operate as a fraud or deceit upon any

22    person.

23         Second, that the defendant's actions were taken in

24    connection with a contract of sale of a commodity in interstate

25    commerce.

LBUQspeP

1          Third, that the defendant acted knowingly, willfully,
2     and with the intent to defraud.
3          In addition, the government would also have to prove
4     venue by a preponderance of the evidence here in the Southern
5     District of New York.
6          THE COURT:  Mr. Spence, did you just now hear counsel
7     for the government summarize the elements of the crime that it
8     would have to prove at trial to prevail in its case?
9          THE DEFENDANT:  I did.
10         THE COURT:  Do you understand that the government
11    would have to prove each of the elements of the crime beyond a
12    reasonable doubt in order to obtain a conviction against you?
13         THE DEFENDANT:  Yes.
14         THE COURT:  Do you still wish to proceed with your
15    plea?
16         THE DEFENDANT:  I do.
17         THE COURT:  All right then, let me ask you this:  Did
18    you in fact commit the offense that's charged in Count One of
19    the indictment?
20         THE DEFENDANT:  I did.
21         THE COURT:  Can you please tell us in your own words
22    what you did that makes you guilty of this crime?
23         THE DEFENDANT:  From approximately 2017 to 2019, I
24    traded virtual currencies on the internet for individual
25    investors.  During that time period, there were occasions when

LBUQspeP

1    I announced false information regarding the success of my

2    investments.  When I published information I knew was

3    misleading, I continued to solicit and receive additional

4    investments.  For part of this time period, I was located in

5    New York, New York.  I knew that this was wrong.  I got in way

6    over my head and made a lot of mistakes.  I am really sorry.

7           THE COURT:  All right.  So when you say you published

8    false information, was it information that you thought was

9    significant enough that it would lead to investments?

10          (Counsel and defendant consult)

11          THE COURT:  Were the facts about which you were

12   reporting facts that you considered important to investors'

13   decision-making?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And you knew at the time the statements

16   you were making were untrue?

17          THE DEFENDANT:  Yes.

18          THE COURT:  The transactions would affect interstate

19   commerce, I'm assuming, counsel?

20          MS. MAGDO:  Yes, your Honor, although I guess we could

21   ask Mr. Spence whether he knew that any of his clients or

22   victims were outside of the state of New York.

23          THE COURT:  Did you in fact know that any of your

24   clients were outside of New York State?

25          MS. LEVINE:  Your Honor, I think under the statute,

LBUQspeP

1  the fact that he used the internet is sufficient to establish

2  this element, so I don't think we have any kind of factual

3  dispute on this point.

4                  THE COURT:  Does the government agree?

5                  MS. MAGDO:  That's fine.

6                  THE COURT:  Do either counsel believe any additional

7  facts need to be elicited for a satisfactory allocution?

8                  MS. MAGDO:  Not from the government.

9                  MS. LEVINE:  No, your Honor.

10                 THE COURT:  Let me ask both counsel two final

11 questions.

12                 One, if there are any additional questions of any kind

13 that you believe I should be asking Mr. Spence today?

14                 And, second, if either of you know any reason why I

15 should not recommend acceptance of the plea?

16                 MS. MAGDO:  No to both questions.

17                 MS. LEVINE:  Same here, your Honor.

18                 THE COURT:  Very well.  Based on my colloquy with

19 Mr. Spence, I conclude that he understands the nature of the

20 charge and the consequences of his plea.

21                 I am also satisfied that his plea is voluntary, and

22 that there is a factual basis for the plea.

23                 I will also note for the record that I see no issue

24 with respect to Mr. Spence's competence to enter a plea.  He

25 indicated he took medication for a mental health issue, but I

LBUQspeP

| | |
|---|---|
| 1 | did not detect any cause or concern with respect to competence |
| 2 | here, and he did confirm that he was able to fully anticipate |
| 3 | in this proceeding today.  That seemed true to my observation. |
| 4 | Accordingly, I hereby recommend that Judge Kaplan accept the |
| 5 | proffered plea to Count One of the indictment in 21 CR 116.  I |
| 6 | understand Judge Kaplan has not yet set a sentencing date.  Is |
| 7 | that right? |
| 8 | MS. MAGDO:  That's correct. |
| 9 | THE COURT:  Is defendant out of custody? |
| 10 | MS. LEVINE:  Yes, your Honor. |
| 11 | THE COURT:  So, 120 days for a control date.  Let's |
| 12 | see where that would take us.  We are now on November 30.  Why |
| 13 | don't we just say the end of March. |
| 14 | MS. MAGDO:  Thank you. |
| 15 | THE COURT:  March 31 as a control date for sentencing? |
| 16 | MS. LEVINE:  Thank you, your Honor. |
| 17 | THE COURT:  Please be in touch with Judge Kaplan's |
| 18 | chambers.  Obviously, that's only a control date.  Are there |
| 19 | any issues here as to bail? |
| 20 | MS. MAGDO:  No, your Honor.  The government would ask |
| 21 | that he be continued on his current bail conditions. |
| 22 | THE COURT:  I'm going to ask the government to prepare |
| 23 | the prosecution case summary for purposes of the presentence |
| 24 | report and to deliver it to the probation department no later |
| 25 | than 14 days from today. |

LBUQspeP

1          I'm also going to ask defense counsel to contact the

2     probation department to schedule a presentence interview of

3     your client to be held within that same two-week window, and to

4     make yourself available for that interview so that the matter

5     can be moved forward.

6          I assume the government will order a copy of the

7     transcript of this allocution and will submit it together with

8     any necessary additional paperwork to Judge Kaplan so that he

9     may act on my recommendation.

10          Is there anything else?

11          MS. MAGDO:  No.  Thank you, your Honor.

12          THE COURT:  Counsel?

13          MS. LEVINE:  No.  Thank you.

14          THE COURT:  Best of luck to you, Mr. Spence.

15          THE DEFENDANT:  Thank you.

16          (Adjourned)

17

18

19

20

21

22

23

24

25